SPERO v. WEST SIDE BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 30, 1899.)

1. CHECKS—ASSIGNMENT—EVIDENCE.

In an action to recover the value of certain checks, which were payable to a firm whose indorsement was forged, and which were subsequently collected by defendant, plaintiff's uncontradicted testimony was that he was a member of the firm which had dissolved; that he had purchased the debts due to the firm, and had had everything transferred to him; and that he assumed control of the firm's assets after its dissolution. *Held* sufficient to show that the checks were assigned to plaintiff.

2. SAME—SIGNATURE.

It was proved that the checks were equal to sums that had been due to the firm from the alleged makers, who had been accustomed to pay their bills by checks, and who had received the checks as canceled, and that defendant had taken an indemnifying bond of the one from whom he had purchased the checks, reciting that he had collected the checks. Some of the signatures were proven. *Held* sufficient to show that the checks had been signed by the alleged makers.

Appeal from trial term, New York county.

Action by David Spero against the West Side Bank of the City of New York. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Gibson Putzel, for appellant.

Daniel P. Hayes, for respondent.

McLAUGHLIN, J. This action was brought to recover the value of certain checks alleged to have been converted by the defendant. The answer denied all the material allegations of the complaint. The plaintiff had a verdict, and from the judgment entered thereon, and an order denying a motion for a new trial, the defendant has appealed.

Upon the trial it appeared that in January, 1885, the firm of Spero & Friedman, composed of this plaintiff and one Rachael Friedman, was formed, and it continued until sometime in 1886, when by mutual consent it was dissolved; the plaintiff purchasing all the outstanding accounts and indebtedness to said firm, and thereafter continuing the business. At the time of the dissolution the firm had in its employment as a bookkeeper one Sambolino, and he was retained by and acted for the plaintiff for some time thereafter. While Sambolino was thus employed by both he stole certain checks sent by various customers through the mail to the plaintiff in payment of goods purchased. The checks were made payable either to the order of Spero & Friedman or the plaintiff, and Sambolino forged the name of the payee thereon, and then delivered them to a third party, who, in turn, indorsed and delivered them to B. Blumenstock & Son, which firm indorsed and delivered them to the defendant, and they were collected by it.

The defendant attacks the judgment, and asks for a reversal of it, principally upon two grounds: (1) That the evidence introduced

upon the trial was insufficient to justify a finding that the checks payable to the order of Spero & Friedman had ever been assigned to, or were owned by, the plaintiff; and (2) that the evidence was insufficient to justify a finding that any of the checks were signed by the alleged makers.

After a careful consideration of the evidence set out in the record before us, we are satisfied that it was amply sufficient to justify the conclusion reached by the jury.

1. As to the checks payable to the order of Spero & Friedman, the plaintiff testified, in substance, that when the dissolution of the firm took place he purchased the interest of the other partner in the indebtedness to the firm, and "had everything transferred to him"; that he was to assume all the liabilities and have all the debts, and if there were any "lawsuits, or anything of that kind," he was to "shoulder" them. His testimony is not contradicted in any respect. Neither was it disputed that the plaintiff, after the dissolution, assumed the entire control of the assets of the firm, except certain merchandise, and thereafter continued in the exclusive management of the business of the same. This was sufficient to justify the court in permitting the jury to pass upon and determine whether the accounts represented by the checks, the checks themselves, or the causes of action represented by them, were owned by the plaintiff at the time the action was commenced.

2. The evidence introduced was also sufficient to establish the genuineness of the signature of the various makers of the checks. Some of the signatures were proven by persons familiar with the handwriting of the makers, and as to all of them it was made to appear that each was for the identical amount due from the maker to the payee, and that the respective makers were in the habit of paying their bills to the plaintiff by checks sent through the mails, as these were sent; that the checks were received and collected by the defendant, and prior to the commencement of the action had been returned to the respective makers, canceled. It was also made to appear that after the action was commenced the defendant took a bond of indemnity from B. Blumenstock & Son, which recited, among other things, that the obligors had been depositors of the defendant, and in the course of their dealings had deposited with the bank, for the purpose of collection—

"Certain checks drawn by various persons on various banks to the order of David Spero, and in some cases to the order of Spero & Friedman, which said checks bore an alleged indorsement by the payees, respectively; and whereas, the said several checks were collected by the said West Side Bank, and the proceeds thereof credited to the account of the above-bounden Bernard Blumenstock and Leon Blumenstock, under their firm name of B. Blumenstock & Son; and whereas, all of the said proceeds were withdrawn by them from said bank; and whereas, questions have lately arisen concerning the validity and genuineness of the indorsements to and upon said checks (that is to say, said David Spero claims that the alleged indorsements of his name on the checks which were made payable to his order as aforesaid, and also claims that the alleged indorsements of the firm name of Spero & Friedman on the checks which were made payable to their order, respectively, were forged by one Sambolino); and whereas, the said David Spero claims that the West Side Bank is liable for the repayment and return to him of the moneys collected by it under said checks," etc.

Taking all this evidence, can there be any doubt that the genuineness of the signatures to the checks was a question of fact, to be determined by the jury? Clearly not. This evidence established that a number of customers were indebted to the plaintiff or his firm for goods purchased; that checks were received by the plaintiff bearing the alleged signatures of the various customers for the precise amounts of their respective indebtedness. These checks are stolen, and deposited with the defendant bank. The bank proceeds to, and does, collect the amount called for by each check, and not one of them has ever been protested or dishonored, so far as appears. They are found in the possession of the various makers, canceled. An action is brought against the defendant for conversion, and it immediately takes a bond from the persons from whom it received the checks, indemnifying it against loss, which recites that "the said several checks were collected by the West Side Bank." All these facts were undisputed, and they not only justified, but required, the jury to reach the conclusion which it did.

The other questions raised by the appellant are without merit, and it is unnecessary to here consider them.

The judgment is right, and must be affirmed, with costs. All concur.